NATHANIEL WEED, HARVEY WEED AND HENRY W. BARNES *v.* JOSHUA TERRY.

Where two parties claim the same land under conflicting titles, and there is a doubt as to which title is valid, that fact is sufficient consideration for an agreement to compromise and divide the land; and a specific performance of such agreement, though not in writing, will be decreed, where the party seeking it has acted fairly, and there has been a part performance to take it out of the statute of frauds.

The delivery of possession under an agreement, is an act of part performance.

BILL for specific performance.

The bill states that, December 10th, 1839, complainants obtained a judgment, in the Circuit Court for the county of Oakland, against Robert Le Roy and Samuel C. Munson, on a bill of exchange drawn by them in favor of complainants, on Daniel Le Roy, for $1,499.04 damages, and $23.42 costs. That execution was issued and delivered to the sheriff of Oakland county, who, February 4th, 1840, by Linus Jacox, his deputy, levied on Pontiac village lots 11, 12, 13, 34, 35 and 36, of the subdivi-

sion of out-lots 14, 15, 16, 25 and 26, according to the plat of the same in the register's office for the county of Oakland, in book M. of deeds, 199. That the sheriff, by his deputy, gave due notice of the sale, and, on March 28th, 1840, sold the lots to complainants for $1,591.01, the full amount due on said execution; and made the proper certificate. That a mistake occurred in the entry of said levy, and also in the notice of sale, in describing the premises as Pontiac village lots 11, 12, 13, 34, 35 and 36, according to the plat of said village, as recorded in the register's office, in book "M.," page 119; but the levy and sale were made of the lots first described, and there is no plat of any part of said village recorded in said book M., except at page 199, the place first mentioned. That, on March 30th, 1842, the redemption having expired, the sheriff executed a deed of the lands to complainants; and that all the lots were occupied as one parcel. That Robert Le Roy and wife executed a deed of the same premises to the defendant Terry, in March, 1840, after the levy, and before the sale to complainants; and said Le Roy and Terry are charged with notice of the levy at the time said deed was executed; and that the makers and acceptors of said bill were and are bankrupts, and wholly insolvent. That Terry, in the summer of 1840, made proposals to complainants, through H. C. Knight, their attorney, for an amicable arrangement of their claims to said premises, by an appraisal and division in proportion to their respective demands on Le Roy,—he stating his claim at about $1,100,—which proposition was afterwards agreed to by complainants, and such acquiescence made known to Terry, who still adhered to the proposition. That, after long delay, about March 1st, 1842, Terry agreed with Knight upon Willard McConnell to appraise and divide said property, in pursuance of said agreement,

and that lots 11 and 12 fell to the share of complainants, and 13, 34, 35 and 36 to Terry; and that both parties went into possession of their respective parcels, and ever since complainants have continued in possession of lots 11 and 12, and exercised all acts of ownership over them. That, about April 1st, 1842, in pursuance of the agreement by which each party was to quitclaim to the other their respective lots, a quitclaim deed of lots 13, 34, 35 and 36, from complainants to Terry, was drawn up by said Knight, and sent to New York, from whence it was returned duly executed, to be delivered by said Knight to Terry, on receiving from the latter a quitclaim deed of lots 11 and 12, and was tendered to Terry on or about the first of June, 1842, when he refused to complete such agreement. That, soon after that deed was forwarded to New York, a quitclaim deed for the other lots was drawn up by Knight, at Terry's request, which he promised to execute, with his wife, when Mr. Whittemore, with whom he desired it should be left, would call at his house for that purpose; and afterwards, in Whittemore's presence, refused, saying he had been advised not to execute it. Prays for specific performance, injunction, &c.

The answer denies that the levy was made on the lots in controversy, and avers that, it appears by the return, it was made upon lands described otherwise, and that the sheriff gave notice of the sale of the premises, only, described in his return. Admits the sale of the lots described in the bill, and that complainants were the purchasers; and the giving of the certificate. Denies that said lots were in one parcel, but asserts that a road ran between the two parcels, as proposed to be divided. Admits the deed from Le Roy, and states the consideration at $1,400, but denies notice of the levy at that time. Denies that he made the proposition to divide the land to Knight, and

avers it came from Knight to him, and that he was induced to accede to it, by the fraudulent representations of Knight that the proceedings under the execution were regular and valid. Says that, after the time of redemption had expired, Knight again saw him and informed him the title had become absolute, but that he was still willing to have the land divided, whereupon they agreed upon McConnell, and the appraisal took place. Says that the agreement was not reduced to writing, and insists on the statute of frauds. Denies he put, or agreed to put, complainants in possession, but says Knight took possession without defendant's consent, and while he was absent from the state; and that, when he returned, he threatened to commence legal proceedings, but was induced by Knight to desist, he promising to institute proceedings in chancery to settle the title, and to account for the rents and profits. Admits Knight prepared a quitclaim deed for him to execute, and that he agreed to execute the same, but avers that he was deceived by fraudulent representations, and insists on the statute of frauds. Admits offer of quitclaim deed from complainants.

A replication was filed, and proofs were taken; but it is unnecessary to set forth the evidence, as the facts sufficiently appear in the opinion of the Court.

*O. D. Richardson & H. C. Knight,* for complainants.

*G. W. Wisner & Wm. Draper,* for defendant.

THE CHANCELLOR. It is not necessary to decide whether complainants, or defendant, would have succeeded at law in making a good title to the lots. Neither party was exactly satisfied as to the title. Both claimed the lots;—complainants under the levy and sheriff's deed to them, and defendant under his deed from Le Roy;—and

Weed *v.* Terry.

they finally agreed to compromise the matter by dividing them between them, in proportion to their respective claims against Le Roy, and McConnell was agreed upon to make the division.   The doubt hanging over the title was a sufficient consideration for this agreement.  *Attwood* v. ————, 1 *Russ. R.* 353.   And, if there was nothing unfair on the part of complainants in bringing it about,— no advantage taken of defendant,—and there has been a part performance of it to take it out of the statute of frauds, a specific performance should be decreed.

The delivery of possession under an agreement is an act of part performance.  *Willis* v. *Stradling*, 3 *Ves. R.* 378 ; *Boardman* v. *Mostyn*, 6 *Ves. R.* 467 ; *Bowers* v. *Cator*, 4 *Ves. R.* 91 ; *Gregory* v. *Mighell*, 18 *Ves. R.* 328 ; 1 *Sugd. on Vend.* 116, *and cases there cited.*

The agreement, and the division of the lots by McConnell, who awarded numbers 11 and 12 to complainants and the others to defendant, are admitted ; but defendant denies delivering possession of them to complainants, or to Knight, their agent.  The only effect of this denial is to drive complainants to proof of the fact ;—the answer not being evidence, though under oath, as an answer under oath is waived by the bill.   Knight, who is complainants' principal witness, and who acted as their agent in making the agreement, and was one of their attorneys in obtaining the judgment against Le Roy, states in his testimony that Terry said, after the division was made by McConnell, that it was fair, and he was satisfied with it; and that it was then agreed, deeds should be executed by the parties to each other, and that, in the mean time, they should take possession of their respective portions.   That Hunt, as tenant to Terry, was then in possession of all the lots ; and, as the year for which they had been let to him would expire in a few days, Terry was to receive the rent; that

Knight, as agent, agreed to let lots 11 and 12 to Hunt for another year, at $100 rent, if Hunt did not remove upon a farm he owned ; and that Hunt, under this agreement, occupied the premises about a fortnight after his lease from Terry expired, when he went to reside on his farm, and the premises were let by Knight to a Mr. Miles. Knight's testimony does not stand alone with regard to the possession. It is supported by facts and circumstances, testified to by McConnell and Hunt. McConnell says, Terry expressed a willingness at the time, (when the lots were divided,) to give possession of the house and two lots. Again, "I think it was agreed that each party should, at the time, go into possession." Hunt says, "Terry did not appear to have any thing further to do with the house; and Mr. Knight took upon himself the control, without any objection, to the knowledge of deponent, from Mr. Terry." If Terry had not given up the possession to complainants, how happened it he did not call upon Hunt, to know whether he wanted the premises another year ; or for rent the fortnight he continued in possession after his year had expired ? Or that he did not rent the premises to some other tenants? Was he ignorant that Knight, as complainants' agent, was acting the landlord in letting the house, making repairs, and the like? He says Knight took possession when he was absent, and without the state. But he does not state the time, nor has he adduced any proof of the fact.

Terry was not taken by surprise, when he entered into the agreement. The first conversation between him and Knight on the subject, was in the summer of 1840, and the division was not made until March, 1842. After the deed to complainants for the two lots had been drawn, and Knight and Whittemore had called with it at his house, to have it executed by him and his wife, and found

Weed *v.* Terry.

him absent from home; on being informed of it, he promised to execute the deed whenever Whittemore would call again for the purpose. That he was deceived all this time, in supposing the proceedings on the execution were regular, and that there was no question as to complainants' title, is incredible, and contradicted by the testimony in the case. Could he have thought Knight wished to give him his clients' property? In a conversation between him and Knight, Charles Terry, his own witness, says he heard him say the sheriff's sale was not good; Whittemore testifies to about the same thing, in one or more conversations he heard between them, and, moreover, that Terry advised with him as to what he had better do.

A decree must be entered that defendant execute, acknowledge, and deliver to complainants, a quitclaim deed of lots 11 and 12, with a covenant against his own acts, and procure his wife to join therein or release her right of dower, on receiving a like deed, executed and acknowledged by complainants, for the other lots. And defendant must pay to complainants their costs.